# Wheeling.

## LAIDLEY'S ADM'RS *v.* BRIGHT'S ADM'R.

### Decided May 7, 1881.

1. On the trial of a motion to reverse a judgment by default, made in a circuit court under the 5th section of ch. 134 of the Code, the court ought to permit a sheriff to correct his return on the summons in the suit according to the facts, but ought not to permit the clerk to correct the summons itself, though he has made a mistake by inadvertence in issuing it.

2. In such a case, if the judgment by default was a joint judgment against several defendants, and it appears, that the writ, a copy of which was served on some of the defendants, was not signed by the clerk, such judgment should be reversed, and the cause remanded to rules to be properly proceeded with.

3. *Quære:* Whether on such a motion the circuit court should consider any errors in the proceedings or judgment except those specifically pointed out in the notice as the basis of the motion.

4. The only change in the pre-existing law produced by the 11th section of ch. 99 of the Code is to allow a joint action of *assumpsit* against certain defendants, who before the passage of that section could be sued jointly in an action of debt only.

5. Since the passage of our Code, as before, a single bill under seal is not a note, but a specialty; and therefore the drawer and endorsers of such single bill, though it be made payable and negotiable at a bank in the State, cannot be sued jointly in debt or in *assumpsit* by virtue of said 11th section of ch. 99 of the Code. See *Mann* v. *Sutton,* 5 Rand. 253.

6. If an execution has issued on a judgment, and a forthcoming bond has been given thereon and forfeited, and another judgment entered awarding an execution thereon, a writ of error and *supersedeas* should be awarded for error in the first judgment not only to it but also to the judgment awarding execution on the forthcoming bond.

Writ of error and *supersedeas* to two judgments of the circuit court of the county of Kanawha, one of which was rendered on the 27th day of June, 1879, and the other on the 18th day of December, 1879, in an action in said court then pending, wherein Albert Laidley's administrators were plaintiffs and M. A. Bright's administrator was defendant, allowed upon petition of defendant.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgments complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

M. A. Capehart on March 21, 1874, instituted an action of debt against F. D. Beuhring, F. E. Beuhring, Albert Laidley, James F. Hansford, George P. Thompson jointly on the following writing :

"Sixteen months after date we or either of us promise to pay to the order of Albert Laidley $1,000.00, for value received, with interest from date, payable and negotiable at the Bank of Huntington, West Virginia.

"Witness our hands and seals this date, October 22, 1872.                    "F. D. BEUHRING, [Seal.]
                          "F. E. BEUHRING, [Seal.]"

On the back of which were the following names in their order : Albert Laidley, James F. Hansford, George P. Thompson, M. A. Capehart and these words : "Pay John H. Russell, cashier or order for collection and return." The first summons was regular on its face to answer M. A. Capehart of a plea of debt $1,002.30 damages $50.00 but there was no signature to the writ, simply ————— clerk at its foot. This process was returned thus endorsed : "Executed April 2, 1874, by delivering an office-copy thereof to F. D. Beuhring, F. E. Beuhring and Albert. Laidley, the other defendants no inhabitants,

                          "D. J. SMITH."

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

This summons was addressed: "To the sheriff of Cabell county."

On March 23, 1874, another summons precisely like the first was issued, addressed: "To the sheriff of Kanawha county," and signed, "W. E. Gillison, clerk;" and this was returned thus: "Served on James F. Hansford and George P. Thompon on the 2d day of April, 1874, by delivering an office-copy of this writ to each of them; and as to the others no inhabitants of my county, and not found.

"B. F. WYATT,
" D. for P. W. Morgan, S. K. C."

On the return day of these writs, at April rules, 1874, the plaintiff filed his declaration. It was just such a declaration as ought to have been filed, if the writing sued on had been a negotiable note instead of a writing under seal; except that it says: "That heretofore to wit on the 22d day of October, 1872, the said F. D. Beuhring and F. E. Beuhring made their certain note in writing *under seal, &c.*," describing it correctly. It set forth the protest of this note, as it is called, in the usual form. This declaration was in its form taken from Mathews's forms, except that in describing the note it is said, as above, *under seal.* A protest in the usual form accompanied this writing. A regular rule to plead was given to all the defendants, they being all regarded as duly summoned by the clerk, and an office-judgment was entered up by the clerk at rules against all the defendants; and they not appearing at the May rules, this office-judgment was entered as confirmed by the clerk.

At the next term of the circuit court of Kanawha county on May 29, 1874, the following entry was made by the court in this cause: " This day came the plaintiff, by her attorneys, and on her motion this cause is continued as to the defendant, F. E. Beuhring, until the next term of this court; and neither of the other defendants appearing, and the plaintiff not desiring a jury, this cause is submitted to the court in lieu of a jury, to

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.
ascertain the amount the plaintiff is entitled to recover from the defendants, F. D. Beuhring, Albert Laidley, James F. Hansford and George P. Thompson; and the court, after hearing the evidence, is of opinion that the plaintiff is entitled to recover against the said last named defendants the sum of $1,095.15, being the debt in the declaration mentioned, including interest to date. It is therefore considered by the court, that the plaintiff recover against the said defendants, F. D. Beuhring, Albert Laidley, James F. Hansford and George P. Thompson, the said sum of $1,095.15, with interest thereon from the 29th day of May, 1874, till paid, and her costs by her about the prosecution of her suit expended, including $15.00 as allowed by law."

On July 20, 1874, a writ of *fieri facias* was issued on this judgment and levied on certain property of the defendant, F. D. Beuhring; and a forthcoming bond was given and forfeited and duly returned. Notice was given on this forfeited forthcoming bond, and a judgment rendered, or more properly an award of execution thereon made against F. D. Beuhring, J. S. Miller and Albert Laidley, obligors in said bond. F. E. Beuhring was also an obligor in this bond; but no notice was taken of her. An execution was issued on this forfeited forthcoming bond and was paid in full by the defendant, Albert Laidley, to D. F. Smith, sheriff of Cabell county, and the execution so returned, also that the same had been paid over to Hedrick & Couch. They were the plaintiff's counsel in the suit.

The defendant, Laidley, died, and the plaintiff married J. D. Bright; and the administrator of Laidley gave this notice to Bright and wife:

"*M. A. Capehart* v. *F. D. Beuhring, F. E. Beuhring, Albert Laidley, James F. Hansford* and *Geo. P. Thompson.*—In debt. Upon a motion to reverse a judgment by default.

"M. A. Bright, late M. A. Capehart, the plaintiff in the above entitled action, and J. D. Bright, her husband,

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

are hereby notified that on the 2d day of the next term of the circuit court of Kanawha county, to wit, on the 5th day of November, 1878, we will move said court to reverse and set aside a judgment by default rendered by said court on the 29th day of May, 1874, in the above entitled action, in favor of M. A. Capehart against F. D. Beuhring, Albert Laidley, James F. Hansford and Geo. P. Thompson, for the sum of $1,095.15 and costs, for the following errors apparent upon the record:

" 1. There was no service of summons upon F. D. Beuhring, F. Beuhring and Albert Laidley.

" 2. There is a variance between the writ of summons and the declaration. The debt described in the declaration is larger than and different from that described in the writ.

" 3. The declaration describes, as the foundation of said action, a "note in writing under seal," and a joint judgment was rendered upon said declaration against F. D. Beuhring, whose name is signed to said "note in writing under seal," and Albert Laidley, James F. Hansford and Geo. P. Thompson, whose names are written upon the back of said "note in writing under seal," and who are only liable as assignors of a common law security, and not as endorsers of a negotiable instrument.

" 4. The "note in writing under seal" described in said declaration, is not a negotiable instrument under the laws of the State of West Virginia, and would not entitle the plaintiff to a joint judgment against an intermediate number of the makers and assignors thereof, because said note in writing, though payable in the State of West Virginia, was not payable at a particular bank or at a particular office thereof for discount or deposit, nor at the place of business of a savings-institution or savings-bank.

" The plaintiff has not alleged in her declaration that she was compelled to pay, and did pay, the cost of protest described in said declaration, to wit, $2.00, and yet

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

she obtained judgment for the same against the defendants.

" 6. And many other errors apparent upon the record.
" Respectfully,
" JOHN B. LAIDLEY and
" L. H. BURK,
" Administrators of Albert Laidley, deceased.
" By Counsel."

This notice was served on Bright and wife on September 7, 1878, and was regularly docketed on the day mentioned in the notice, that is, on November 5, 1878, and the administrator of A. Laidley moved the court to reverse the judgment rendered in said case on May 29, 1874, for errors apparent upon the record.   On June 27, 1879, the court rendered this judgment on this motion :
" Administrators of Albert Laidley, deceased, v. M. A. Bright et al.—On notice and motion to reverse a judgment rendered by default for errors apparent on the record.

" This day came John B. Laidley and L. Burk, administrators of Albert Laidley, deceased, by their attorneys, insisting upon said motion, as well M. A. Bright, late M. A. Capehart, and J. J. Bright, her husband, defendants to said motion, by their attorneys, resisting said motion, and the matter arising upon said notice and motion being submitted to the court, the court having seen and inspected said notice and record of the judgment in the case of M. A. Capehart against F. D. Beuhring, Albert Laidley and others, and the minutes of proceedings in said cause, and the original papers filed therein, and having heard the evidence adduced and argument of counsel on both sides, doth decide, that there is error in said judgment.   It is therefore considered, that the said judgment entered in the cause of M. A. Capehart against F. D. Beuhring, said Albert Laidley and others on the 29th day of May, 1874, be reversed and annulled, and that the plaintiffs in this motion recover against the defendants therein their costs by them expended in the

prosecution of their said notice and motion, including $10.00 as allowed by law. And the court proceeding to render such judgment in the cause of M. A. Capehart against F. D. Beuhring and others as should have been rendered, it is further considered, that said cause be remanded to rules there to be proceeded with. Thereupon the defendants tendered their bill of exceptions to the several rulings of the court upon the trial of said notice and motion, which is in the words and figures following, to wit: ' Be it remembered,' &c., which is ordered to be filed and made a part of the record."

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'x.

This bill of exceptions shows, that though it was objected to by Laidley's administrators the court permitted the sheriff of Cabell county to amend his return to the original writ in this case, the sheriff having shown by his affidavit the real facts of the manner of executing the writ, and that he had inadvertently in making his return failed to add to his signature his official character. The amended return was as follows: "I served the within writ on the 2d day of April, 1874, by delivering to F. D. Beuhring, F. E. Beuhring and Albert Laidley, each in person, on the day last named, an office-copy of this writ, and the other defendants named in said writ are not inhabitants of my bailiwick.

"D. J. SMITH, *S. C. C.*"

Laidley's administrators then produced before the court the complete record in this case as hereinbefore stated, and the defendants in the motion, M. A. Bright and wife, introduced all the proceedings in the case after the judgment, including the proceedings on the forthcoming bond and the executions thereon, as hereinbefore stated, and also proved, that when said writing was signed by F. E. Beuhring as one of the makers thereof, she was a married woman under coverture and so continued until after the rendition of the original judgment and the judgment on the forthcoming bond. Laidley's administrators objected to any of this evidence being read or given by the defendants in this notice.

The defendant Bright also read in evidence an entry from the process-book as follows:

"*M. A. Capehart* v. *F. D. Beuhring, F. E. Beuhring, Albert Laidley, James F. Hansford and George P. Thompson.*

"S'm's in debt, $1,002.30.   D'm'ge, $50.00.   S'm's, 3 copies to Cabell co.   S'm's and 2 copies to Kanawha. Issued M'ch 21st, 1874.   Hedrick & Couch, att'ys."

He also proved by W. E. G. Gillison, clerk of this court, that he was clerk of this court, when the said process was issued; that said process was made out by Wm. Kline, and the written part thereof was in his handwriting, who was his deputy at the the time, and that he was satisfied that the process sent to Cabell county was not signed by him by clerical omission or mistake, from the fact that he now finds it unsigned; that he does not remember to have ever seen the process before, and thinks the process was taken from the clerk's office and sent to Cabell county by some one, but did not know by whom.

To all of which evidence of said Gillison, and also that taken from the process book aforesaid, the said administrator objected, but the court overruled said objection and permitted said matters to go in evidence.

The clerk then asked leave of the court to amend the original writ by signing his official signature thereto; but the court refused to permit this amendment.   To this action of the court the defendant Bright objected. This being all the evidence heard on said motion, the court set aside said judgment mentioned in the notice and motion; and the defendant Bright excepted thereto.

Afterwards on December 18, 1879, the court on a motion based on a notice to said Bright and wife regularly docketed in the circuit court of Kanawha county quashed the execution issued on the original judgment, and the forthcoming-bond taken on said execution, and set aside the judgment awarding execution on the forthcoming-bond, and quashed the execution issued thereon.

This last proceeding was against J. J. Bright, administrator of M. A. Bright, late M. A. Capehart, she having died.

1881
Spring
Special Term.
Laidley's
Adm'rs
v.
Bright's Adm'r.

Jesse J. Bright, administrator of M. A. Bright, has obtained a writ of error and *supersedeas* from this Court to these two judgments of the circuit court of Kanawha county, one rendered June 27, 1879, reversing and annulling said original judgment, and the other rendered December 18, 1879, annulling the judgment on the forthcoming-bond, &c.

*Smith & Knight,* for plaintiff in error cited the following authorities :

12 W. Va. 250 ; Code, ch. 99, §§ 10, 11 ; 12 W. Va. 526 ; Barton Law Pr. 172, 173 ; 21 Gratt. 263 ; *Id.* 383 ; 10 W. Va. 171 ; Code, p. 628, § 19 ; 12 W. Va. 306 ; 1 Mat. Dig. 283, note 2 ; 4 W. Va. 309 ; 15 W. Va. 687 ; Freeman Ex. § 69.

*John B. Laidley,* for defendants in error cited the following authorities :

10 W. Va. 115 ; 4 Min. Inst. 767, 768, 770 ; 5 W. Va. 446 ; Code 1868, ch. 134, § 5 ; 3 W. Va. 386 ; Code 1868, ch. 125, § 15 ; 2 W. Va. 481 ; Code 1868, ch. 134, § 6 ; *Id.* § 3 ; 21 Gratt. 263 ; 4 Min. Inst. 1091 ; 2 Rob. (old) Pr. 589 ; Code 1860, ch. 181, § 6 ; Cons. Art. VIII, § 5 ; Stat. 1872–3, ch. 16, § 10 ; 21 Gratt. 383 ; Code, ch. 99, §§ 7, 10, 11 ; 4 Min. Inst. 458 ; 8 Leigh 514 ; 3 Munf. 151 ; Bouv. Dict. "Debt" ; Code, ch. 151, § 13 ; 10 Leigh 700 ; 7 W. Va. 47 ; 4 W. Va. 305 ; 5 Rand. 132 ; 9 Gratt. 127 ; 18 Gratt. 509 ; 12 W. Va. 537 ; 4 Min. Inst. 766 ; 2 Munf. 282 ; *Id.* 336 ; *Id.* 540 ; 11 Leigh 90 ; *Id.* 372 ; 12 Leigh 217, 227 ; 7 Cranch 288 ; 1 Va. Cas. 6 ; 1 Leigh 442 ; 1 Munf. 605 ; 2 Leigh 545 ; Bart. Pr. 337.

*J. H. & J. F. Brown,* for defendants in error cited the following authorities :

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

15 W. Va. 677; 4 Rand. 253; Code of Va. 1849, Tit. 43, § 11; 5 W. Va. 255; 11 Gratt. 220; 15 W. Va. 123; 2 Rand. 475; 7 Gratt. 195; 16 Gratt. 128, 129; Bart. Pr. 74; 4 Call 492; 9 Leigh 473; 9 Gratt. 655; 10 Gratt. 149; 4 McCord 159; 5 Whart. 323; 2 Halst. 272; 1 Bay. 398; 2 McCord 381; 2 Spears 673; 5 Blackf. 370; 15 Wend. 256; 2 Stew. 259; 3 Watts & S. 410; 6 Watts & S. 227; Am. Lead. Cas. (H. & W.) 407; 1 Dan. Neg. Inst. p. 28, § 31; Edw. Bills 208, 210; Chitty Bills 166; Story Bills §62; Story Notes § 55; 3 Houst. 289; 3 Minn. 332; 5 Johns. 239; 15 Gratt. 117; 6 Munf. 15; 2 Wash. 219; 7 Pet. 113; 3 Rand. 316; 9 W. Va. 415; 15 W. Va. 106; 1 Pet. 81; 9 How. 94; 6 Wall. 231; 13 Ia. 496; 5 Bush 320; 9 Sarg. & R. 142; 1 Rob. 564; 13 Gratt. 650; Freeman Judgmts. § 150; 1 Dev. Eq. 500; Story Pl. (2d ed.) 371; Vin. Abr. "Error" (E. c.) 1, 2; 7 Cr. (S. C.) 288; 1 Va. Cas. 6.

GREEN, PRESIDENT, announced the opinion of the Court:

The defendants in error by their counsel insist, that the writ of error in this case should be dismissed, because it is a writ of error and *supersedeas* to two separate judgments rendered in separate and distinct causes. There is nothing in this position. The judgment on a forthcoming bond is not considered as brought up by a *supersedeas* to the first judgment, see *Moss et al.* v. *Moss's adm'r*, 4 H. & M. 303; but the two judgments constitute one proceeding, so far as granting a *supersedeas* is concerned; and if the judgment on the forthcoming bond has been rendered before the *supersedeas* is issued, and the error exists in the first judgment, the petition ought to pray a *supersedeas* to both judgments; and they should be both embraced in the *supersedeas*. *Monroe* v. *Webb's ex'rs*, 4 Munf. 73; *McCormick* v. *Bailey supra*. So far have the courts gone in holding, that it is proper for the appellate courts to try the whole mat-

Syllabus 6.

ter in one case, that an appellate court may properly
extend the *supersedeas* first awarded to the judgment
subsequently obtained on the forthcoming bond. See
*Bell* v. *Bogg*, 4 Munf. 260. We must therefore consider
this case on its merits.

Did the circuit court err in reversing and annulling
the judgment obtained by default some four years and
five months previous to this notice and motion to reverse
it? The motion was made under the 5th section of
chapter 134 of the Code of West Virginia, page 637,
which among other things provides, that " the court, in
which there is a judgment by default, may on motion
reverse such judgment for any error, for which an ap-
pellate court might reverse it if the following section
was not enacted: * * * . Every such motion
shall be after reasonable notice to the opposite party, his
agent or attorney in fact or in law, and shall be within
five years from the date of the judgment."

The proceedings in this case were all regular and with-
in the five years; and the question properly presented
to the circuit court was, whether this judgment by default
ought to be reversed. The reasons for reversing it as-
signed in the notice were, that there was no service of
process on the three defendants, residents of Cabell
county. The sheriff of Cabell county returned the pro-
cess sent him, executed on these three parties, and to
this return he appended his name "D. J. Smith," but
not his official character, and it no where appears on the
face of this return, that he was the sheriff of Cabell
county. But this defect the circuit court of Kanawha
county permitted to be cured by permitting the sheriff
of Cabell county on this motion to reverse, to amend
his return according to the facts sworn to by him, and
to append thereto his signature in his official character,
he stating, that he had failed to sign it in that way to
the original return by inadvertence. In this the circuit
court did not err, as was expressly decided by this Court
in *Capehart's adm'r* v. *Cunningham's adm'r*, 12 W. Va. 250,

But was the process in this case so served on these three defendants living in Cabell county, as to justify the clerk at rules in entering up an office-judgment against them, and the court on their not appearing entering up the judgment by default against two of them, F. D. Beuhring and the intestate, Albert Laidley, of the plaintiffs in error? The amended return of the sheriff only showed, that he had served upon them a writ not in any manner signed by the clerk of the court. Some courts have held, that a writ not signed by the clerk or proper officer is an absolute nullity, and a judgment rendered on such writ would, if this were so, be absolutely void (see *Stoyton* v. *Newcomer*, 1 Eng. (Ark.) 453; *Smith* v. *Assanassieffe*, 2 Rich. (S. C.) 334; *Foss* v. *Issett*, 4 Ia. 77); but some of these cases, which apparently hold such a writ absolutely void, are capable of being interpreted to mean only, that they are voidable. The great weight of authority is, that such a writ not signed by the clerk is not absolutely void, but is voidable only, and being voidable, if after its service a judgment was rendered by default, such a judgment would be valid, unless set aside by proper proceedings in the case or upon a writ of error. But none of the authorities hold such a writ to be a good and valid writ. They all hold, that by proper proceedings it may be quashed as insufficient, or the judgment rendered on it as liable to be reversed, unless the defendant by his appearing and pleading or in some other way has waived this defect. See *Lovell* v. *Sabin*, 13 N. H. 37; *Huntley* v. *Harvey et al.*, 37 Vt. 107; *Rudd, surv.*, v. *Thompson & Barnes*, 22 Ark. 363; *Parsons* v. *Swett*, 32 N. H. 79; *Ripley* v. *Warren*, 2 Pick. 392.

These and other cases were reviewed by this Court in *Ambler, Trustee* v. *Leach et al.*, 15 W. Va. 677; and the conclusion of the court was thus expressed by us in the syllabus of that case: " A writ otherwise regular is not absolutely null and void if its date is blank and it is not signed by the clerk. Such writ is voidable, and

may be avoided by motion to quash if made by the defendant; but if not so avoided, or in some other manner, in the suit, and a judgment is rendered against the defendant by default on such writ, and such judgment is not set aside by motion to the court or by writ of error it is valid and binding." The inference to be drawn from this decision is clearly, that in the judgment of this Court a judgment obtained by default on the service of such a writ, as was served on the three defendants residing in Cabell county, ought to be set aside on a motion made to the circuit court, such as was made in this case, and if refused by such court, then by this Court on writ of error such judgment by default would be reversed. This is the inevitable conclusion to be drawn from that case ; for when a judgment is obtained by default, the statute of *jeofails* has no effect on such judg-. ment, and the Appellate Court will look into the writ and all the other proceedings. *Hatcher* v. *Lewis*, 4 Rand. 152.

Cases have been reversed for defects in the writ far less serious than the omission of the clerk to sign the writ at all, a defect so serious, that some courts, as we have seen, have held it to render the writ absolutely void. While such is not, we hold, the effect of such an omission, it is nevertheless a serious defect, much greater than defects, which have been held sufficient to reverse judgments by default. Thus an omission in the writ to claim the charges of protest was held in *Hatcher* v. *Lewis* sufficient to reverse a judgment by default. In *Rudd, surv.* v. *Thompson and Barnes*, 22 Ark. 363, the court says: " It has been the practice of this court to reverse judgments by default in cases, where the summons was without the official seal of the clerk, and such writs were not treated as void." Much more should a judgment be reversed, when rendered by default, and the clerk had failed to sign the writ or authenticate it in any manner.

The plaintiff in the original suit endeavored to have

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Blight's Adm'r.

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.
this fatal defect in the writ cured by the clerk's asking leaving of the court, when the motion to reverse the judgment was being tried. to be permitted to amend the writ served on the defendants residing in Cabell county by signing his name thereto ; but the court properly refused to permit him to make this amendment. If it had been permitted, the amended return of the sheriff would have been thereby rendered false. The sheriff of Cabell, as he stated, had served the summons on these defendants by leaving with them severally an office-copy of the writ without the name of the clerk signed thereto. This would not have been a copy of the writ such as the statute requires to be given to the defendant as a service of the summons. So that if this amendment of the writ had been allowed, its only effect would have been to have compelled the sheriff to have again amended his return according to the facts ; and this would have shown, that there had never been a proper service of the writ as amended on any of those defendants.

There is a great difference between the amendment of a return of a summons and of the writ by the clerk. The sheriff's amendment of his return simply shows the actual facts, as they had always existed ; and the courts have been very liberal in permitting a sheriff to amend his return, as it obviously promotes the ends of justice and wrongs no one. So liberal have the courts been in permitting sheriffs to amend their returns, that in *Woodsworth, &c.,* v. *Mill et al.* 4 Gratt. 90 the court actually permitted a sheriff to amend his return on an execution, after an action based on the execution had been commenced against him and his sureties. But the amendment by a clerk of a summons issued by him is a very different thing, as its effect is to make false the return of the sheriff on such summons. It is therefore not as in the case of the sheriff's amendment of his return to bring before the court the actual facts, as they had really always existed, but the very reverse. Ac-

cordingly no such liberality in amending writs has ever existed, as has always existed in the amendment of returns by the sheriff on process either *mesne* or final.

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

It is true, our code chapter 125, section 14, page 601 does allow the court to permit the plaintiff to amend the summons by inserting therein the true name of the defendant, where there has been a misnomer. But as the same section takes from the defendant the right to plead a misnomer in abatement, it is obvious, that both parties by such an amendment remain in the same position, as if no amendment of the writ was made. The only effect of such an amendment being to cause the right name of the defendant to appear in the judgment, which is simply a convenience, as he would be equally bound by the judgment, if rendered against him by his wrong name. The next section *i. e.* section 15 of chapter 125 of the Code, page 601, goes further and gives the power to the court to amend the writ in any case, when the defendant has pleaded in abatement any defect in the writ or return or any variance in the writ from the declaration. But it should be observed that the court is only permitted to allow such amendments of the writ, when the defendant has been served with process, has appeared and pleaded in abatement. As after such plea had been disposed of, a new process could be issued and served corresponding with the proposed amended process, the only effect of this is to save all this trouble, and the defendant being actually in court and therefore knowing of the amendment, the statute wisely declares, that he need not be formally served with process, but he shall be treated, as though served with the amended process; and even then, that this amendment under these circumstances may not operate as a surprise or injustice to the defendant, the section we have referred to says, it shall be done only on such terms as the court deems just. Thus careful has our statute-law been in the few cases in which it permits a summons to be amended.

It seems to me therefore, as the defendants never

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.
appeared in the original suit, the court in it would clearly have had no power before the rendition of the original judgment in this case to have permitted the clerk to have amended the writ served on the defendants resident in Cabell county, by signing his name thereto after the service of the summons on them; and much less could the court, more than four years after the final judgment had been rendered, authorize the clerk to so amend this summons, especially when on his statement it was doubtful, whether this writ addressed to the sheriff of Cabell county was ever really issued by the clerk at all, or whether it was taken out of the office without his authority or that of his deputy. The circuit court was therefore fully justified by reason of this error alone in the original suit in reversing the judgment, it had entered by default of all the defendants, and in remanding the cause to rules to be there correctly proceeded with.

We will pass over the second and fifth errors assigned in the notice of the motion to reverse the original judgment, as they were much less serious errors if errors at all; they are merely objections of form, and as the case must for the reason before assigned in accordance with the judgment of the circuit court be remanded to rules, these supposed errors, if they be really errors, may be readily corrected, so that it is unnecessary, that we should consider them, as it is not probable, that the circuit court will be in this case likely to be called upon again to act upon them.

We will now consider the third error assigned in said notice. If it be an error, it is one of substance affecting the rights of the parties to this suit and is incapable of correction. This alleged error in the original judgment and proceedings is, that this is an action of debt based on "writing under seal," as the declaration shows, brought jointly against the obligors in such sealed writing and the assignors of such writing, improperly called endorsers. It is insisted, that these parties by putting

their names on the back of this writing under seal and 1881 Spring Special Term. by its subsequent protest did not become liable to be proceeded against jointly with the original obligors in Laidley's Adm'rs v. Bright's Adm'r an action of debt; but that the protest was of no avail to affect their liability, which by virtue of their putting their names on the back of a common law obligation was that of assignors at most, that is, that such assignors could only at most enter into a collateral obligation to be responsible for the debt; in case the plaintiff after the exercise of due diligence failed to make the debt out of the obligors in the sealed writing.

The plaintiffs in the original suit insist, that by our statute-law this writing being on its face payable and negotiable at a bank, though it was under seal, was nevertheless mercantile paper liable to be protested, and that the endorsers of it incurred the same responsibilities and were liable to be proceeded against in the same manner, as if they had endorsed a similar note drawn by the makers and signed but not sealed by them.

The question in dispute is: What is the true charac- Syllabus 5. ter of a paper promising to pay money to a particular person or his order payable and negotiable at a particular bank in this state, when said writing is under the hand and seal of the makers and endorsed by the payee? Is such a paper under our law mercantile paper, which should be protested; or is it simply a common law obligation, a bond, and are the endorsers of it simply assignors, and not endorsers? There can be no question, that such a paper prior to the passage of our Code in 1868 was not commercial paper but was a mere bond, on which a joint action of debt against the drawers and the endorsers, or more properly speaking the obligor and the assignors, could not have been maintained. It was so expressly decided in *Mann* v *Sutton*, 4 Rand. 253. The opinion of the court in that case is very short; and as it is important that we take a correct view of the grounds of this decision, I shall quote the opinion, as they cannot otherwise be stated more briefly and clearly. The court says:

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

" The instrument, which is the foundation of this action, is a single bill under seal, by which F. F. Sutton promises to pay to W. Sutton or order, six months after date, negotiable and payable at the Farmers Bank of Virginia the sum of $3,000.00. There are several endorsers and a joint action of debt is brought against the obligors and endorsers. A demurrer to the declaration was put in, and sustained by the court below. The simple question is, can this action be sustained?

" Upon general principles there could not be the doubt of a moment. The contracts of the obligor and the different endorsers are several, distinct, and of different grades. The obligor has bound himself by a *sealed instrument;* the endorsers by their *hands* merely. The defence cannot be the same.

" But we have an act of Assembly, which authorized the holder of a foreign bill of exchange protested to commence and prosecute an action of debt for principal, damages, interest and charges of protest, against the drawers and endorsers jointly or against either of them separately; and we have another act saying, that *notes* made payable at the Virginia or Farmers Bank, shall be placed on the footing of foreign bills of exchange ; and as this obligation is made negotiable and payable at the Farmers Bank, it has been supposed, I presume, that this authorized the joint action. The conclusion to which we have come in the matter differs *toto cœlo* from this. The act says *notes* made negotiable, &c., shall be on the footing of bills of exchange.

" This is not a *note,* but a *specialty ;* differing in dignity, in the mode of defence, indeed, in all the legal consequences flowing from it. It is a general rule, that these new remedies, innovating on the settled doctrines of the common law, shall be taken strictly. But the most liberal and latitudinous construction, it seems to us, could not extend the act of Assembly in the case before us. We are clear, that the judgment be affirmed."

The statute-law remained unchanged after this decis-

ion, till our Code was passed in 1868, except that its provisions were extended to such notes payable at any bank or savings-institution, and on such notes an action of debt was authorized against all liable by virtue thereof *or any intermediate number of them.* See Code of 1860, ch. 144 secs. 7 and 11, p. 629. The tenth section of said act in the Code of 1860 was as follows:

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

" 10. An action of debt may be maintained upon any note or writing, by which there is a promise, undertaking or obligation to pay money, if signed by the party who is to be charged thereby or his agent."

The eleventh section in the Code of 1860 was:

" 11. Upon any such note, which on its face is payable at a particular bank, or at a particular office thereof for discount and deposit or the place of business of a savings-institution, or savings-bank, and upon any bill of exchange, whether such note or bill be payable in or out of the State, if the same be protested, an action of debt may be maintained and judgment given jointly against all liable by virtue thereof, whether drawers, endorsers or acceptors, or against any one or intermediate number of them for the principal and charges of protest, with interest thereon from the date of such protest and in the case of such bill for the damages also."

It is not disputed, that under these provisions of the Code of 1860 an action of debt, such as was brought in the case before us, would not lie against the maker or more properly obligor and the endorsers or more properly assignors jointly of any note under seal, and that the decisions and reasonings of the court in *Mann* v. *Sutton,* 4 Rand. 254, above stated, would be conclusive of the case, if this suit had been brought prior to the passage of the Code of 1868. But it is insisted, that the alterations made in these two sections in the Code of 1868 entirely changed the law and made both the reasoning and decision in *Mann* v. *Sutton,* 4 Rand. 254, no longer good or law.

The changes made in these two sections of the Code of

Syllabus 4.

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.
1868 were these: in the 10th section after the words "an action of debt" were inserted the words "or *assumpsit*," and after the words "any note or writing" were inserted the words "whether sealed or not." In the 11th section the only change made, is in the phrase "an action of debt may be maintained," which is made to read "an action of debt or *assumpsit* may be maintained," that is, the words "or *assumpsit*" are inserted after the word debt.

The apparent object of the Legislature in making these alterations in these two sections was simply to permit an action of *assumpsit* to be brought in certain cases, where under the common law and the Code of 1860 only an action of debt could be brought; and it would not seem, that anything else was intended by these changes. We certainly can not suppose it was the purpose of the Legislature by these changes to alter the character of the obligations of parties to any contract. If this had been their purpose, they certainly ought not to have permitted these new provisions to have operated upon and affected contracts, which had already been made. Such legislation would have clearly been unconstitutional, violating the obligation of contracts. If it had by these changes been intended to change the character of the obligation, entered into by one who endorsed a bond, from a collateral obligation to be responsible for the debt, if it could not be made out of the obligor or maker of the bond by the use of due diligence, into a direct obligation to pay the debt, for which he might be sued in debt at once, as contended, then such legislation would have been null and void, unless it was confined to contracts made after the passage of the Code of 1868. It was however perfectly general and applied equally to contracts made before as well as after the passage of the law. If, as we understand, these changes merely gave an additional remedy in enforcing certain contracts without in any manner altering the rights of the parties to the contracts or their liabilities, then such legislation was legitimate and proper; but if it did affect, as is

claimed, the rights and liabilities of parties, it was improper, unless confined to future contracts in its operation, which it was not by its words. These considerations greatly strengthen our conclusion, that the only object of these changes was to give an additional remedy, and not to change the liabilities of parties either as to past or future contracts.

1881
Spring
Special Term.

Laidley's
Adm'rs
v.
Bright's Adm'r.

These statutes were merely remedial. The only change in the 11th section is, we have seen, by the insertion of the words "or *assumpsit*" to allow a joint action of *assumpsit* to be brought against the makers and endorsers and other parties to negotiable paper, or against any intermediate number of them, when such a joint action, if brought under the law as it was previously, could only have been brought in debt. For while at common law *assumpsit* would lie against any one of the parties, as the drawer of a bill, the maker of a note, or the endorser of either, if negotiable, yet no joint action of *assumpsit* before this change in this 11th section could ever have been brought sgainst any two of them, as a maker and endorser or two separate endorsers. This, I conceive, was the whole purpose of the Legislature in this change made in this 11th section.

It was contended by the counsel for the defendants in error, that a much more fundamental change in our law was effected by these alterations. It is not claimed, that this fundamental change is produced by the alterations directly made in this 11th section, for it is obvious, that standing alone the alteration made in this 11th section could have no greater or different effect than we have attributed to it. But it is claimed, that when this 11th section in the Code of 1868 says, that a joint action of debt may be brought against the maker and endorsers of *any such note*, that it meant a very different thing from the same language in the 11th section of the Code of 1860. It is claimed, that the words "any such note" in the Code of 1860 in this 11th section referred to the note spoken of in the preceeding section,

1881
Spring
Special Term.

Laidley's
Adm'rs
▼
Bright's Adm'r.

which was "any note in writing by which there is a promise to pay money ; " and therefore clearly it did not extend to or include a sealed instrument or bond. But this preceding section also referred by the words "any such note" in the 11th section in the Code of 1868, had been greatly changed, and by that section a note had in effect been defined to mean "a writing whether sealed or not, by which there is a promise to pay money ; " and on "any such note" the 11th section gives a joint action against the maker and endorser, and thus it has a very different meaning and effect from this 11th section in the Code of 1860.

Now it is true, that this 10th section of the Code of 1868 is awkwardly worded, and standing by itself it might be understood by one, who did not know that the word note meant always an unsealed writing, that the author of this section supposed it might mean a sealed writing. But whatever doubt may be created as to the meaning of the words "any such note" by the awkward language of this 10th section, it would seem to be effectually removed by the fact, that the 7th section, as contained in the Code of 1860, and which defines what is to be considered as mercantile paper in this State, was re-enacted in the same words in the Code of 1868. It would therefore seem clear, that under the 7th section, as contained in the Code of 1868, no writing under seal but only certain promissory notes could be protested. When therefore the 11th section speaks of *such* notes being protested, it interprets itself and shows clearly, that by such notes is meant such notes only as under the 7th section could be protested, that is, certain promissory notes, excluding of course all writings under seal.

We are therefore satisfied, that no joint action lay against the obligors or makers of the writing sued on in this case and the endorsers or assignors of it ; and therefore the original judgment in this case entered against the several parties jointly was erroneous, and it was properly reversed by the circuit court on the motion.

The fourth ground of error assigned in the notice of this motion was, that this writing or note was not payable at a particular bank. On the face of the writing it was payable at the Bank of Huntington ; and there is apparently no basis for this assignment of error. But in argument before this Court it is insisted, that the Bank of Huntington is an unincorporated bank, and though there is no evidence of this in the record, and the evidence on which the court acted, when it entered the original judgments, does not appear, yet it is said, that this Court knows judicially what banks have been incorporated in this State, and thus judicially knows, that the Bank of Huntington is not an incorporated bank.

In answer to these positions it is urged, that the notice of said motion did not inform the parties fairly, that this fact, that the Bank of Huntington was not a chartered bank, would be urged as a reason for reversing said judgment, nor does the record show, that it was relied on, when the motion was acted on by the circuit court, and that unless a party, who asks a court to reverse a judgment by default on notice and motion under the statute, specifies in his notice a particular ground of objection, he can not rely upon such ground before the circuit judge or in the Appellate Court.

The case of *Coffman* v. *Sanger*, 21 Gratt. 263, strongly supports these views. I am however not satisfied in my own mind, that the views taken by the court in that case are sound. And if it was necessary in this case to consider this alleged error and several others, which were not mentioned in the notice except as included under the phrase " errors apparent on the face of the record," I would consider the point, whether this Court has a right to look into such errors apparent on the face of the record, but which were not specifically mentioned in the notice. But this is itself an important question, and as it is really unnecessary for us to consider any of these alleged errors not specifically named in the notice, we

will not do so, as our right to do so may be regarded as questionable.

For the reasons, which have been assigned, I am of the opinion, that the judgment of the circuit court of Kanawha county rendered on the 27th of June, 1879, reversing and annulling the previous judgment by default, which had been entered by the said court, and also the judgment rendered by said court on December 18, 1879, reversing and annulling a judgment upon a forthcoming bond on an execution issued on said judgment by default should both be affirmed, and the defendants in error should recover of the plaintiff in error their costs in this Court expended and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENTS AFFIRMED.