# CHARLESTON

FISHER, SONS & COMPANY *v.* CROWLEY AND OTHERS.

Submitted February 22, 1905.    Decided March 7, 1905.

1. SUMMONS—*Defect Therein.*

A summons, commencing an action in a superior court of general jurisdiction, materially defective in respect to time or place of its return, to which objection has been taken in proper time and manner and preserved by exception, will be held void and quashed in a direct proceeding in the same action, to reverse for the error of the trial court in refusing to quash it. (p. 316.)

2. DEFECTIVE SUMMONS—*Amendment Thereto.*

A summons, commencing an action in a court of record cannot be amended in any substantial particular, unless the statutes of amendment authorize it. (p. 316.)

3. DEFECTIVE SUMMONS—*Not Waived by Plea to Merits, When.*

A defect in such summons is not waived by pleading to the merits after the overruling of a motion to quash, to which an exception has been taken and made a part of the record. (pp. 318, 320.)

4. DEFECTIVE WRIT—*Appearance Thereto—Record.*

It is not necessary for a defendant, in appearing in a court of record to quash a defective writ, commencing an action, to ¦cause the record to recite that his appearance is for that purpose only, in order to avoid a waiver of defect in the jurisdiction of the court. In such case, whether an appearance is general or special is to be determined by the record as it stands at the time the motion is made. (p. 323.)

Appeal from Circuit Court, Cabell County.

Action by M. Fisher, Sons & Co. against T. H. Crowley and others. Judgment for plaintiffs, and defendants bring error.

*Reversed.*

WALLACE & FITZPATRICK, for plaintiffs in error.

CAMPBELL, HOLT & DUNCAN, and W. K. COWDEN, for defendants in error.

POFFENBARGER, JUDGE:

In an action of *assumpsit* brought in the circuit court of Cabell county, by M. Fisher, Sons & Co., against T. H. Crowley, B. L. Priddie and John J. Kearney, the summons, which was issued on the 25th of November, 1903, was made returnable "at rules to be held in the clerk's office of said court on the first Monday in December next." On the 4th day of April, 1904, the defendants appeared, and, after requiring security for costs from the plaintiffs, who were non-residents, craved oyer of the writ, and, after it had been read to them, moved to quash the same. The motion was overruled, a plea of *non-assumpsit* tendered was rejected, for reasons which need not be stated, and judgment was rendered. Of the errors assigned, it is deemed unnecessary to notice any except the first one, which is founded upon the action of the court in overruling the motion to quash.

Section 1 of chapter 125 of the Code requires rules to be held in the clerk's office of every circuit court on the first Monday of every month, except when a term of the circuit court happens to commence on the first Monday in a month, or on certain other days mentioned in said section, and provides that under such conditions the rules shall be held on the last Monday in the next preceding month. The day on which the summons in this case was made returnable was the first day of a term of court. Hence, the rules for that month were held on the last Monday in November. Section 2 of chapter 124 of the Code requires all process to be made returnable within ninety days, to the court on the first day of the term, or in the clerk's office to the first Monday in a month or to some rule day, unless it is otherwise provided. It is plain, therefore, that the summons could have been made returnable to the court on the day named in it as the return day thereof, but could not be made returnable to rules on that day because no rules were held, or could be held, at that time. Literal compliance with the mandate of the writ, to the officer as well as to the defendants, was impossible. Though returnable on a day which could have been made the time for its return, had it been made returnable to the proper proceedings or tribunal, namely, the court, the officer could not return it to the court, and the defendant could not appear to it in court, without departing from its terms, because it did not command such return and appearance. It commanded them, respectively, to return the writ, and appear, not in the court, but in the clerk's office, at a time at which no rules were held and, therefore, at which nothing could be done.

As section 2 of chapter 125 of the Code provides that rules held on the last Monday in a month shall be entered in the rule docket and endorsed on the declaration or bill, as if taken on the first Monday of the month to which they relate, the succeeding month, it is insisted that process can be made returnable to the first Monday in that month because it is, in law, a rule day. As this construction of section 2 would, at least, partially nullify the provision in section 1, to which reference has been made, and make conflict between other statutory provisions, it cannot be accepted. If process can be made returnable to that day as a rule day, any other proper

proceedings at rules, such as the filing of pleadings, the giving of rules to plead, and the entry of conditional judgments and decrees *nisi*, may take place on the same day. If proceedings at rules may take place on, either the last Monday of the month preceding the term of court, or the first Monday of the succeeding month, at the election of the parties, it would be in their power to conduct all rule proceedings on the first Monday and the provision of section 1 of chapter 125 would become non-effective. A graver objection to this construction is that it would make the time of what may be termed the legal, as distinguished from the manual, return of process, which is an important event in legal proceedings, uncertain. Upon the return to rules, the plaintiff may file his declaration or bill and have a conditional judgment or decree *nisi*. At the same time, the defendant is entitled to appear, and, if the plaintiff has filed his declaration or bill, to respond by proper pleadings to the merits, and, if not, to give a rule requiring the plaintiff to file his pleadings at the next rule day, on pain of being nonsuited in the event of his failure to comply with the rule. The construction suggested makes it impossible for the defendant to know with certainty the time at which these rights shall vest, respectively, in himself and the plaintiff. It is not to be assumed that the legislature intended to make him appear twice in answer to the summons in order to exercise his right to plead or obtain a rule requiring the plaintiff to plead, nor that he should be exposed to the dangers consequent upon uncertainty as to the time of appearance. If the process can be made returnable to the first Monday as a rule day, when shall the declaration be filed, on that day or in the preceding week? If, in the preceding week, it would be filed before the actual return of the process. If, on the day of the return, it would be filed at a time at which the statute impliedly says rules shall not be held, for it says that, under such conditions, they shall be held in the preceding week.

As the writ, in respect to its return day, is not in conformity with law, it is void, according to principles announced in *Kyle* v. *Ford*, 2 Rand, 1, a decision binding upon this Court, and *Coda* v. *Thompson*. 39 W. Va. 67. *Kyle* v. *Ford* holds that process returnable to a day which is not a return day is

void. The statute under which that case arose required process to be made returnable to the court or to a *previous*. rule day and the writ had been made returnable to a day which was the first day of a term of court and also a rule day, and was described in the writ as a rule day, just as in the summons in this case.    The court, holding that it could be properly returnable on that day to the court only, and not to rules, declared it void. See the similar case of *Raub* v. *Otterback*, 89 Va. 645. In *Coda* v. *Thompson* an attachment was made returnable more than ninety days after its date, contrary to the general statute above referred to and also to section 5 of chapter 106, · which requires an attachment to be returnable to the next term of court.    Other cases, declaring the statutory provisions relating to the return of process to be mandatory and holding process not conforming thereto void, are *Lavell* v. *McCurdy*, 77 Va. 673; *Warren* v. *Saunders*, 27 Grat. 259; *Gas Co.* v. *Wheeling*, 7 W. Va. 22.    A summons not signed by the clerk is so fatally defective that it cannot be amended. *Laidley* v. *Bright*, 17 W. Va. 779, 791, 792; *Hickman* v. *Larkey*, 6 Grat. 210.    Such is the conclusion usually expressed by the authorities.    *Camman* v. *Perrine*, 9 N. J. L. · 253; *Seurer* v. *Horst*, 31 Minn. 479; *Roberts* v. *Allman*, 106 N. C. 391; *Rattan* v. *Stone*, 4 Ill. 540; *Williamson* v. *McCormick*, 126 Pa. St. 274.

The correctness of the main proposition asserted in these cases is verified by the common law text-writers and decisions.    That which is incurable must be void.    At common law defects of this kind could not be cured by amendment, and our statute does not authorize an amendment in such case. Though by the common law, some writs were amendable, the power of amendment only existed as to slight and formal defects.    Even in this respect, some writs were not amendable by the common law courts.    There were two classes of writs, the original writs issuing out of the court of chancery and returnable into the common law courts, and judicial writs, issuing out of, as well as returnable to, the common law courts.    The former were not the writs of the law courts, were not issued by them, were in no manner within their control or power, and were, therefore, not amendable by them, however slight the defect.    *Blackamore's Case*, 8 Coke Rep. 156*a*; 2 Eng. Rul. Cas. 767. By the Act of 8 Hen.

VI. Cap. 12, the law courts were empowered to amend in certain respects the original writ, but only (1) as to legal form; (2) as to one word "which is not any latin for another;" (3) as to omission or addition of words. (4) as to a departure by the clerk, in framing the writ, from the instructions given him therefor, or from the record, specialty, writ, copy or note. (5) as to misprisions of the clerk in the negligent keeping or voluntary defacing of the record. *Blackamore's Case,* cited; 1 Tidd's Pr. 123, 125; 1 Bac. Abr. Tit Amend. D 1. Among the judicial writs, issuing out of the law courts and returnable to them, were the *capias quare clausum fregit,* by which actions were generally commenced in the common pleas, and the bill of Middlesex and attachment of privilege in the King's Bench. In the Exchequer a number of writs for the commencement of actions were used. Tidd's Pr. 104 and 105. Over all these the courts had a limited power of amendment, which extended to the date of *teste* and the name of the defendant, and other mere irregularities easily correctable, without prejudice. But as to material defects, such as a wrong return day, these writs were not amendable. Thus, in *Kenworthy* v. *Peppiat,* 4 Barn. & A. 288, a writ returnable on a *dies non* was declared absolutely void and not amendable. The court said the writ was distinguishable from the case of amendment of the party's name, where, as a writ it was good, though not applicable to the particular case, and further, that the amendment would virtually make a new writ. This case was decided in 1821. As to mere matter of form, however, amendments could be made. Thus, in *Reubel* v. *Preston,* 5 East 291, a bill of Middlesex was made returnable "on Monday next after the morrow of the Holy Trinity, instead of on Monday next after eight days of the Holy Trinity." An amendment was permitted because the day and place of return were both correct, since by computation the officer would have found the return day to be the same as if described in the usual way, but the designation of that day was irregular in form. Lord Ellenborough said, on quashing the writ, "If the regularly known forms were departed from in one instance, a thousand whimsical returns might be framed and great confusion introduced." As our summons corresponds to the common law judicial writs, it is amendable to the same extent, without

the aid of any statute.   Sections 14 and 15 of chapter 125 of the Code provide for the correction of misnomers and variances in the writ and nothing more.   Hence, it is probable that they are merely declaratory of the common law and do not authorize an amendment in such case as this.

The invalidity of such summons might not render a judgment founded upon it void, however.   There is a difference between defeating an action by proceedings taken during its progress and in the action itself, and treating it as a nullity in collateral proceedings; for there is a presumption in favor of the jurisdiction of courts of general jurisdiction founded on reasons of public policy, which gives the judgments and decrees support, and makes them invulnerable, in all collateral proceedings.   *Ambler, Trustee*, v. *Leach*, 15 W. Va. 677; *St. Lawrence Co.* v. *Holt & Mathews*, 51 W. Va. 352.

It has been suggested that, by tendering the plea of *non-assumpsit* after the motion to quash had been overruled and making other defenses, the defendants submitted themselves to the jurisdiction of the court, waiving the defect in the writ.   The authority upon which this position is taken is the case of *Railway Co.* v. *Wright*, 50 W. Va. 653, in which a writ of prohibition against a judgment rendered by a circuit court on an appeal from a judgment of a justice of the peace was refused on the ground that the defendant had submitted itself to the jurisdiction of the justice and of the circuit court, by making full defense after a motion to quash a defective return of service had been overruled.   As supporting the principle announced and applied in that case, the general rules applied in *Lane* v. *Railroad Co*, 35 W. Va. 438, *Barksdale* v. *Neal*, 16 Grat. 314, *Harvey* v. *Skipwith*, 16 Grat. 410, *Mahany* v. *Kephart*, 15 W. Va. 800, are relied upon.

That *Railway Co.* v. *Wright* makes a long stride in advance of any former decision of this Court is undeniable. It deprived the defendant of the benefit of a defect in the return of service, after it had appeared specially for the purpose of denying jurisdiction of the court and excepted to the action of the court in overruling the motion to quash the return, saying that if it wished to insist upon its rights to be regularly and legally brought into court, it was bound to abstain from any further appearance in the case after the over-

ruling of its motion to quash. Whether it is too broad in what it actually decided need not be determined here. It is likely that some of the general observations made in the opinion went beyond the case in hand, but, if so, they are *dicta* and not binding upon the Court. One respect in which it differs from this case is that it was an application for a writ of prohibition to a judgment, proper only in cases of lack or abuse of jurisdiction, while this is a writ of error to a judgment into which the error has been carried; another, which seems to have been regarded as most important, is that it had originated in a justice's court, while this did not; and, lastly, the defect was in the service and not in the summons, while here it was in the summons. No decision of this Court holds that there is a waiver of a defect in a summons by proceeding to trial after an adverse ruling on a motion to quash and an exception taken thereto. *Sears* v. *Starbird*, 78 Cal. 225, and *Desmond* v. *Superior Court*, 59 Cal 274, so hold, but they are not in accord with the more carefully considered cases of *Lyman* v. *Milton*, 44 Cal. 630, and *Deidesheimer* v. *Brown*, 8 Cal. 339, neither of which is noticed in the opinion in the two subsequent inconsistent cases. *Desmond* v. *Superior Court* went up from a justice's court and *Sears* v. *Starbird* simply adopted the rule without comment. In view of this, it may be fairly said they are not well considered cases. In Michigan, Indiana, Colorado, Nebraska, Florida and Missouri, it has been held that defective service is waived by going to trial, 2 Ency. Pl. & Pr. 631 and cases cited, but the authority for the decisions, in some instances, is found in peculiar statutes, and most of the cases originated in justices' courts where practically all formalities are dispensed with.

Against this doctrine of waiver in cases of defective service stand the decisions of many states and the high authority of the Supreme Court of the United States. *Harkness* v. *Hyde*, 98 U. S. 476, holds that "Illegality in the service of process by which jurisdiction is to be obtained is not waived by the special appearance of the defendant to move that the service be set aside; nor after such motion is denied, by his answering to the merits. Such illegality is considered as waived only when he, without having insisted upon it, pleads in the first instance to the merits." *Mullen* v. *Railroad Co.*,

(N. C.) 19 S. E. 106, says: "Where a motion made on special appearance to dismiss for want of service of summons is over-ruled, and defendant excepts, his subsequent appearance to the merits waives none of his rights." *Ames* v. *Windsor*, 19 Pick. (Mass.) 247, says: "So, where the defendant, upon the entry of the action in the court of common pleas, moved that court to dismiss it, on the ground that the writ was not duly served, and this motion was overruled, and the defendant thereupon joined in the common demurrer, and the action was thereupon entered in this court, it was *held*, that the defendant had not thereby waived his exception to the legality of the service." To the same effect are *State* v. *Dupre*, 46 La. Ann. 117, and *Railroad Co.* v. *Heath*, 87 Ky. 651. Authorities of greater dignity in this Court, however, are its own decisions in *Chapman* v. *Maitland*, 22 W. Va. 329, (syl pt. 3), *Price* v. *Pinnell*, 4 W. Va. 296, and *Steele* v. *Harkness*, 9 W. Va. 13. These cases are not overruled in *Railroad Co.* v. *Wright*. On the contrary, their soundness and authoritative character are preserved and safe-guarded by an express disclaimer of any intention to apply the admittedly new rule to proceedings in courts of record and the observation that "Under the equitable powers of a justice such rule should prevail in this State."

For the proposition that proceeding to trial and judgment after a motion to quash a defective summons is a waiver of the defect, there is absolutely no authority in this State. All the decided cases declare the contrary. In *Gorman* v. *Steed*, 1 W. Va. 1, there was a full defense, trial, verdict and judgment. Yet the Court reversed the judgment, set aside the verdict, and quashed the summons.

That pleading to the merits, without previous objection to the process or return, is a waiver of process, defects in process, defects in return, defective service and total want of service is in no sense denied. The proposition is asserted by a vast array of authorities. See 2 Ency. Pl. & Pr. 646. It is ancient law in this State. *Tuberville* v. *Long*, 3 H. & M. 309; *Winston* v. *Overseers*, 4 Call. 357; *Harvey* v. *Skipwith*, 16 Grat. 410; *Mahany* v. *Kephart*, 15 W. Va. 619; *Todd & Smith* v. *Gates*, 20 W. Va. 604; *Bank* v. *Bank*, 3 W. Va. 386. But the principle, as sound in law as it is in reason and justice, that the appearance, to have such effect, must be vol-

untary, has never been departed from except in the single
case of *Railway Co.* v. *Wright,* and that, as has been shown,
compelled only a waiver of service, a matter of less conse-
quence than the requisites of a valid summons.   A man may
waive perfect defenses to any demand, however large, though
without a shadow of merit, by a mere failure to appear and
defend, (but, by any law or decision which would prevent his
appearance or cut off his opportunity to make defense, he
would be more effectually robbed of his money than if it were
taken from him by a highwayman.   It must be voluntary and
free from constraint, else it is not binding.   Nor can he be
deprived of any other legal right except by his own volun-
tary act.   He has a perfect right to remain out of court un-
til regularly and legally brought in, and, if an attempt is
made to bring him in irregularly, he has a perfect right to
object, on the ground of irregularity, in proper time, and
manner.   To force him to waive it, by saying, if he does not
do so, he can make no defense on the merits, is a palpable
denial of a legal right.   He must then determine whether he
will risk his whole case on the question of insufficiency of
the writ or return, as the case may be, however full and com-
plete he might be able to make his defense on the merits, or
waive the defect and submit himself to a jurisdiction not law-
fully obtained, in order to prevent his being forever deprived
of his defense in case his objection to the writ or return
should prove to be not tenable.   A test of the court's juris-
diction could never be made except at great peril, a result of
which would be that no attempt to do so would ever be made
in a case in which defense on the merits could be made.   In
order to do so, it would be necessary to suffer a judgment
by default, then go back to the same court with a motion to
set it aside for insufficiency of process, vainly ask the court
to reverse itself, suffer the same adverse ruling, and then, if
possible, obtain a writ of error from this Court and reverse
the judgment for the defect in process alone, and, on failure
of that, to be forever barred of any defense on the merits.
For the court to present to a party the alternative of waiving
a jurisdictional defect or giving up his defense, and compel him
to choose, is not to allow a voluntary submission to its juris-
diction, but to coerce such submission or a relinquishment of
the defense on the merits, however ample and just it may be,

and give to the plaintiff what he is clearly not entitled to—the appearance of the defendant without process or relinquishment of defense in that action.   How can the action of a court, in arbitrarily taking from one man a right, trivial and unimportant though it be, and conferring it upon another, be justified, either legally or morally?   Is the right to stay out of court until legally brought in worth nothing?   Is process a mere idle formality?   If so, why allow a default judgment to be set aside for want of it?   That this will be done all admit, and, in admitting, confess that the acquisition of jurisdiction by process is a matter of substance and not of form.   To say in the same breath that a man may not test it without surrendering his defense to the merits is squarely and flatly inconsistent, contradictory of the admitted nature of the right, and violative of law in that it forcibly deprives the citizen of a substantial legal right.   To say that the office of process is to bring the defendant into court and that, after his appearance, it is wholly unimportant and may be disregarded, falls far short of justifying the ruling.   His appearance is involuntary.   He must come or risk everything on the question of insufficiency of the process.   If he does not, a judgment by default goes against him, forever precluding any defense, be it a release, payment, fraud or what not, unless he can have it set aside for the defect in the process or some other error.   It puts him under compulsion from the moment of service.   The court has laid its powerful hand upon him and will render judgment against him without a hearing if he does not bring to its attention the defect in its process and ask to be discharged.   For the court to say, upon such compulsory appearance and protest against jurisdiction, now that you are here, you must stay, no matter how you were dragged in, is but bitter mockery, utterly inconsistent with the principles of the law, eulogized in these days of enlightenment for their justice and fairness even in those periods in which society was comparatively crude and barbarous.

The large power of a justice to set aside judgments by default and allow full defense afterward, under section 70 of chapter 50 of the Code, may justify the rule adopted in *Railway Co.* v. *Wright*, and similar power is no doubt vested in courts of record in those states in which the Code system has been adopted, such as Colorado, California, Nebraska and

others. But the common law courts in this State have no authority to set aside a judgment unless there be error in the record or fraud on the part of the defendant. As to whether there is a defense to be made they make no inquiry upon a motion to set aside for error.

To test the sufficiency of the summons, the appearance must be special, of course, but it is not necessary in a court of record to make the order, plea or motion expressly state that the appearance is only for the purpose of excepting to the jurisdiction. *Layne* v. *Railroad Co.*, 35 W. Va. 438, at point 2 of the syllabus, says the defendant must so state in submitting his motion, but that case originated in a justice's court in which there need be no formal pleadings or records. Here there was a motion to quash, without any suggestion of an appearance for any other purpose, and to the overruling of the motion, an exception was taken, and then the plea was tendered. In *Layne* v. *Railroad Co.* the defendant submitted a motion to quash and a motion to continue at the same time. This was correctly held to be a general appearance in the absence of any statement of a special appearance for the purpose of moving to quash. *Groves* v. *County Court*, 42 W. Va. 587, seems to impliedly hold that if the record show that a defendant came into court without saying he came for a special purpose, his appearance is presumed and taken to have been a general appearance, but the record showed that the case, commenced by notice, had been docketed and the cause removed to another court, on motion, after appearance, and before any exception to the notice was taken. Hence the record showed more than mere presence in court. Here the record as a whole negatives any intent to voluntarily submit to the jurisdiction. An immediate and direct attack was made upon the writ, and an exception to the action of the court in refusing to quash it put upon the record. However it may be when the objection is insufficiency of service, and defectiveness of the summons in a justice's court, the uniform holding by this Court has been that where the writ commencing an action in a court of record is excepted to before any plea has been tendered or continuance had, or other step taken, importing a general appearance, the defendant is deemed not to have waived or lost the benefit of his motion, if an exception was taken and saved, although he afterward plead to the merits and went to trial.

His intent is shown by the state of the record at the time the plea was tendered and, for obvious reasons, not by what subsequently took place. *Gorman* v. *Steed*, 1 W. Va. 1; *Chapman* v. *Maitland*, 22 W. Va. 329; *Price* v. *Pinnell*, 4 W. Va. 296; *Steele* v. *Harkness*, 9 W. Va. 13.

For the foregoing reasons, the judgment must be reversed, the summons quashed and the action dismissed with costs both in this Court and the court below.

*Reversed.*

SANDERS, JUDGE, (*dissenting in part*):—

I agree that the judgment should be reversed. The court refused to permit the defendants to plead, because the plaintiff had filed with his declaration the affidavit as provided by section 46, chapter 125, of the Code. If this affidavit was such as is required by that section, then it was proper to refuse to permit the defendants to plead, unless their plea was verified by affidavit, as required by that section; but the affidavit filed with the plaintiff's declaration is not sufficient. It was made in the State of New York, and sworn to before a notary public of that State, and, in order to have been good, there should have been annexed thereto a certificate of the clerk or other officer of a court of record of that State, under his official seal, verifying the genuineness of the signature of the notary, and his authority to administer the oath, as provided by section 31, chapter 130, of the Code, and, therefore, the court erred in refusing to permit the defendants to plead.

But I cannot agree with the other members of the Court that the action should be dismissed on the ground that the process is void. This writ summoned the defendants "to appear before the judge of our circuit court of Cabell county at rules to be held in the clerk's office of said court on the first Monday in December next," etc. The day on which the defendants were cited to appear was the day fixed by law for holding a term of the circuit court of said county; therefore, the rules, which, but for said term of court, would have been held in December, beginning on the first Monday, were held on the last Monday in November preceding. The defendants were bound, under the law, to know that the first Monday in December was not a rule day, and were, also,

compelled to know, and did know, as a matter of law, that the day to which the writ was made returnable was the first day of a term of the circuit court. They, therefore, could not have been mistaken as to when they should appear. It is said they were summoned to appear at *rules*, but this cannot be, because the appearance day was named, and they knew it was not a rule day, but the first day of court. The words, "at rules to be held in the clerk's office of said court," should be treated as a surplusage, and, when we do this, we have a writ summoning the defendants "to appear before the Judge of our circuit court of Cabell county on the first Monday in December next," etc. How can it be said that there could have been any doubt in the minds of the defendants as to what day they should appear? It was specifically named in the writ, and, therefore, it was absolutely certain, as to when they should appear. Then, under our statute, a process can be made returnable to the first day of a term of the circuit court. Therefore, we have this writ, specifying a certain day upon which the parties are to appear, and, also, having it returnable at a date to which, under the law, it can properly be returned. Therefore, it seems that the only complaint that can be urged is as to the obscurity in the writ as to whether the parties should appear at rules or at court, but, when we come to consider that the day on which this writ was made returnable was not a rule day, but the first day of a term of court, its meaning seems to be perfectly plain, and, if so, it cannot be considered void. The first case referred to by JUDGE POFFENBARGER, in rendering the opinion of the Court, to show that this writ is void, is *Kyle* v. *Ford*, 2 Rand. 1, and he refers to this decision as being binding upon this Court. This, of course, I admit, but I do controvert its applicability to this case. The decision of *Kyle* v. *Ford* was based upon an entirely different statute from the one which controls the writ in this case. Sections 69 and 70, chapter 128, Code of Virginia, 1819, provide:

"69. The rules in the clerk's office of the county and corporation courts, of the superior courts of law, and the general court, shall be holden on the first Monday in every month, and may be continued from day to day, not exceeding six days.

70. Every writ of *capias ad respondendum* or *scire facias*,

every summons to answer any action, and every *subpœna* in chancery issuing from the clerk's office of any such court, shall be returnable, at the option of the plaintiff, either to the first day of the next succeeding term, or in the clerk's office to some previous rule day," etc.

This statute authorizes the return of process on any *Monday*, whether it be the first day of a term of court 'or not, while our statute directs all process to be returnable at rules or on the first day of a term of circuit court, and also provides that where the term of a circuit court begins on the first Monday of a month, that then the rules for that month shall be held on the last Monday of the preceding month. JUDGE GREEN, in delivering the opinion of the Court in *Kyle* v. *Ford* says: "The act of 1819, before cited, directs that all process shall be returnable either to the first day of the next court, or to some *previous* rule day. The process in this case was not returnable either to the court or to a previous rule day, the rule day to which it was returnable and the first day of court being the same." The process in the case of *Kyle* v. *Ford*, was returnable at rules to be held on a day which was the first day of a term of court, and, also, a rule day. The act of 1819, before cited, directs that all process shall be returnable either to the first day of the next court, or to some previous rule day. Therefore, this process was not good as a process returnable to rules, because it was made returnable to a rule day which was also the first day of a term of court, and not to a *previous* rule day; and it was not good as a process returnable to court, because, while made returnable to a day which was the first day of a term of court, it was made returnable to rules, and under the statute, rules were held in the clerk's office on that day.' The line of demarcation between the case of *Kyle* v. *Ford* and the case we have in hand, is, that under the Virginia statute of 1819, the *first Monday* in *every month* was a rule day, whether the first day of a term of court or not; while, under our statute, when the first Monday in a month is a court day, the rules for that month are held on the last Monday in the preceding month.

The case of *Coda* v. *Thompson*, 39 W. Va. 67, wherein the Court held that process returnable to a day which was not a lawful return day, is void, is relied upon to support

the view that the writ in this case is invalid, but the *Coda* and *Thompson Case* bears no analogy whatever to the case we have. That was where an attachment was issued on the 10th day of April, 1893, requiring a garnishee to appear on the first day of the September term, 1893, of the circuit court of Wayne county, passing over an intervening May term, instead of requiring appearance at the next term after the date of the order, as required by section 5, chapter 6, Code 1891. This decision was clearly right in holding this writ void, because it was returnable at a day to which it could not lawfully be returned; but the writ in this case was returned to a lawful return day, as hereinbefore referred to.

The case of *Laidley's Admr.* v. *Bright*, 17 W. Va. 779, is a case where a process was not signed by the clerk, and in which a judgment by default was rendered against several defendants and the Court held that the judgment should be reversed, but did not hold the writ void.

JUDGE BRANNON, in delivering the opinion in the case of *Miller* v. *Zeiglcr*, 44 W. Va. 485, held that an attachment not signed by the clerk is not void, but only voidable; and amendable.

And in the case of *Ambler, trustee* v. *Leach*, it was held that a writ was not void because its date was blank and it was not signed by the clerk; and JUDGE GREEN, in delivering the opinion of the Court in that case, speaking of void and voidable process, and illustrating them under different heads, says: "As an example of the proceedings of a court being void in the third sense of this word, as above explained, I may refer to the case where no process has been served on the defendant against whom proceedings are being had. The proceedings are not void in the first or broadest sense of this word. These proceedings are not necessarily mere nullities; nor are they voidable proceedings, for they do not require to be avoided. They are usually called void, and perhaps properly so, as we have no other word in our language which can be applied to them except void and voidable, and it is obvious that voidable cannot be properly applied to them. Yet they are not necessarily nullities, or void absolutely and incurably, because the authorities all agree that they can be confirmed. And they are confirmed by the defendant appearing in the case and submitting his case to the judgment of the court, or by pleading in bar to the action."

In my judgment, the authorities cited to support the view of the Court that this writ is void, have no application. None of them are in point, nor do they bear any analogy to this case. I am clearly of the opinion that this writ is not void, and the most that can be said against it is that it is irregular; and, if, irregular, it is certainly proper to allow an amendment.

But, assuming that the writ is void, it was cured by the appearance of the defendants, and their voluntary submission to the jurisdiction of the court. The only purpose of a writ is to notify a defendant of a proceeding to be filed against him, and when he comes into court, the writ has performed all of its functions. It is no part of the pleadings, and after the appearance of the parties, it has lost its usefulness, and when the defendant comes in response to its call, it is thereby made to appear that its purpose has been fully accomplished. The authorities almost, if not quite, unanimously hold that where a defendant appears for any other purpose than to take advantage of a defect in the return of service, or process, or to object to the jurisdiction, that he waives all defects in the writ, and return of service, and cannot afterwards be heard to interpose an objection. "The object of process is to bring a party into court. A judgment by default with process badly executed would not be legal." "By appearance to the writ in any case, for any other purpose than to take advantage of the defective execution or the non-execution of process the defendant places himself precisely in a situation in which he would be if process were executed upon him, and he thereby waives all objections to the defective execution or the non-execution of process upon him." *Bank of the Valley* v. *Bank of Berkeley*, 3 W. Va. 386. And in the case of *Haraey* v. *Skipwith*, 16 Grat. 410, it was held by Judge Daniel, in delivering the opinion of the court: "The object of the writ is to apprise the defendant of the nature of the proceeding against him. The fact of his taking or agreeing to a continuance is evidence of his having made himself a party to the record, and of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought into court." The case of *Mahaney* v. *Kephart*, 15 W. Va. 609, is to the same effect. JUDGE POFFENBARGER says, in *Parker* v. *B. & L.*

*Asso.*, 46 S. E. (W. Va.) 811: "The second summons though insufficient and void, was only a step in the action after commencement, and therefore an irregularity in the proceeding. By appearing to the action generally, therefore, the defendant, under the decisions referred to, waived the defect."

While it is true this was a second summons, in an attachment proceeding, which only became essential by reason of the first summons not being served, yet I fail to distinguish the difference. Where a first summons is not served, a valid second summons is absolutely necessary; just as essential as it was to have a writ in this case, and its validity should be tested by the same rules.

It is so elementary that a general appearance cures all defects in the writ and return of service, that it is hardly necessary to cite authority, but the following authorities will be found to support that view; *Williams & Roy* v. *Campbell*, 1 Wash. 153; *Buckingham et al.* v. *McLean*, 13 How. 150; *Farrar & Brown* v. *The U. S.*, 3 Pet. 459; *Gracie* v. *Palmer*, 8 Wheat. 699; *Pollard* v. *Dwight*, 4 Cranch. 428; *Hickman* v. *Larkey*, 6 Grat. 210; *Wynn* v. *Wyatt, Admr.*, 11 Leigh 584; *Steele* v. *Harkness*, 9 W. Va. 13; *Wright* v. *R. R. Co.*, 50 W. Va. 653; *Parker* v. *B. & L. Asso.*, 46 S. E. (W. Va.) 811; *Thorn* v. *Thorn*, 47 W. Va. 4; *Meighen* v. *Williams*, 50 W. Va. 65; *Morse* v. *Rector*, 44 W. Va. 202; *Blankenship* v. *R. R. Co.*, 43 W. Va. 135; *Cooley* v. *Lawrence*, 12 How. Prac. 176; *Palmer* v. *Logan*, 4 Ill. 56; *Bank* v. *Tile Co.*, 105 Ind. 227; *Anderson* v. *Burchett*, 48 Kan. 781; *Layne* v. *R. R. Co.*, 35 W. Va. 438; *Fonse* v. *Vandervort*, 30 W. Va. 327.

And, again, this Court has repeatedly held that in appearing specially and submitting a motion to quash a writ, or defective service thereof, that the record must affirmatively show that the defendant appeared specially for that purpose, and no other. *Layne* v. *O. R. R. Co.*, 35 W. Va. 438; *Blair* v. *Henderson*, 49 W. Va. 282; *Blankenship* v. *K. & M. Ry. Co.*, 43 W. Va. 135. It is said that these proceedings refer to justices of the peace. While it is true that these decisions were given in cases brought from justices, yet in laying down the rule, I do not understand that the Court confined it to proceedings before justices, and I fail to see why there should be a different rule. Process is required to bring a person

before a justice, and so it is in the circuit court, and without which, and the proper service thereof, neither court can acquire jurisdiction of the person. But it may be said that parties can appear before a justice, and, without summons, agree to try their case; and that it takes a writ to bring into life a suit in a court of record; but this Court has decided that a suit in the circuit court can be commenced by appearance and agreement, without process. *Totten* v. *Nighbert*, 41 W. Va. 800; *Hunter* v. *Stewart*, 23 W. Va. 549. Therefore, there is no good reason why the practice before a justice, in this respect, should be different from the practice in the circuit court, because it simply involves the question of obtaining the jurisdiction of the person. There is no practice more common than for a party to file his declaration or bill in open court, and for the defendant to appear thereto, and waive the issuance of process. In the case of *Frank* v. *Zeigler*, 46 W. Va. 618, JUDGE BRANNON says: "The object of service of process is only to notify persons of the suit and bring them under the power of the court. Appearance answers the same purpose. By it the party submits himself to the jurisdiction of the court. Any appearance, except to object to the jurisdiction, as, for instance, to take advantage of a defect in process or return, is a general appearance, not special, and will dispense with its service. Any motion in the case will do so." 2 Ency. Pl. & Pr. 632-637; and in *Groves* v. *County Court*, 42 W. Va. 600, it is said: "Appearance is the first act of the defendant in court."

In this case, the first thing to be done by the defendant was to appear and suggest the non-residency of the plaintiffs, and demand security for costs; and, after the bond had been given, they then moved to quash the writ; and nowhere does the record show that they appeared specially for that purpose; and even if the record did so show, the very act of the appearance to suggest the non-residency of the plaintiff, before the making of such motion, would defeat it when made. Can it be said that the appearance and asking for security for costs was not a voluntary appearance; was not a submission to the jurisdiction of the court; was not an acknowledgment that the process of the court had been served upon them, and that, by reason of that, they came, and when they did come, instead of making their first act that of taking advantage of

the claimed defects, came in, and voluntarily made a motion
for security for costs, and thereby acknowledged the juris-
diction of the court over them. "The making by a person
in a cause of any motion which involves the merits, a motion
for a change of venue, for a continuance—especially when
the motion is granted;—to discharge an order of arrest, to
dismiss the cause on appeal, to modify judgment, for secur-
ity for costs, to set aside a default, or to strike a petition from
the files, constitutes a general appearance." 3 Cyc., 508,
and, also, *Raymond* v. *Strine*, 14 Neb. 236; *Healy* v. *Auit-
man*, 6 Neb. 349, hold that a motion for security for costs is
a general appearance; and I have been unable to find a single
case, or any authority to the contrary, except *Collier* v. *Mor-
gan's Louisiuna, etc., R. Co.*, 41 La. Ann. 41, which, under
a statute of Louisiana, was given the right to make an ap-
pearance to ask for security for costs without being regarded
as having entered a general appearance.    To decide otherwise
in this case is to depart from the well established rule that
this Court has laid down that an appearance for any other
purpose except to take advantage of a defective writ, or the
return of service, is a general appearance, and operates as a
waiver of all defects in the writ and return thereof.

Assuming, however, that the defendants did make a special
appearance, as is required by the decisions of this Court,
still this action should not be dismissed, because they did not
see proper to stand upon their special appearance, but, after
the court had ruled adversely to them, they tendered their
plea in bar, thereby waiving all defects in the writ; saying to
the court, notwithstanding my motion has been overruled, I
am willling to appear and plead, and do now offer to plead.
Is there anything compulsory about it? Did not the defend-
ants have the right to stand on their motion, and, in all rea-
son and justice, should they not be required to stand upon
it? And, if they choose not to do so, and come into court
and contest the plaintiff's case, they ought to be estopped to
deny that the court had jurisdiction.  To permit such prac-
tice will bear no good fruit, but its product will be the
encouragement of frivolous technicalities in the trial of cases,
injustice to litigants, and long delay in having their rights
determined.  This view was taken by this Court for the first
time in the case of *C. & O. Ry. Co.* v. *Wright*, 50 W. Va.

653.  JUDGE DENT, in delivering the opinion of the Court in this case, says:   "The purpose of the service of summons is to bring the defendant into court. If he comes voluntarily and presents his case, he obviates the necessity of summons.  It is absurd to hold that a defendant is in court to try his case and if the judgment be for him it is valid, while if it be against him it is invalid, for while he is actually in, he is technically out of court.  In for his own purposes, but out for all other purposes. It is a trial if he wins, but not a trial if he loses.  The provisions of the statute in relation to the service of summons were made for the protection of defendants without notice, and not to enable those with notice to escape just obligations and defeat the ends of justice."  "In many jurisdictions the rule is well settled that where a defendant appears specially, any error of the court in deciding adversely to him is waived by a subsequent general appearance."  3 Cyc., 525. The various States holding this doctrine are:  Alabama, Arkansas, California, Colorado, Florida, Idaho, Iowa, Michigan, Missouri, Nebraska, Oregon, Wisconsin, and, in my view, the case of *C. & O. Ry. Co.* v. *Wright.* adds West Virginia to this list; as will be seen from the following cases, and many others that could be cited, from these States on this point: *Lampley* v. *Beavers*, 25 Ala. 534; *Burriss* v. *Wise*, 2 Ark. 33; *Seers* v. *Starbird*, 7 Cal. 225; *Ruby Chief Min.*, etc., v, *Gurley*, 17 Col. 199; *Stephens* v. *Bradley*, 24 Fla. 201. *Converse* v. *Warren*, 4 Ia. 158; *Morris* v. *Miller*, 40 Pac. (Idaho), 60; *Dailey* v. *Kennedy*, 64 Mich. 208; *Kronski* v. *Mo. Pac. R. Co.*, 77 Mo. 362; *Walker* v. *Turner*, 27 Neb. 103; *Sealey* v. *Cal. Lumber Co.*, 19 Oreg. 94; *Coffee* v. *Chippewa Falls*, 26 Wis. 121.  I regard this as the better rule, and one founded in reason and justice.

It is true the proceeding in the case of *C. & O. Ry. Co.* v. *Wright* was prohibition, but the principle decided was the same as we have in this case, and was the real and only point in that case, and I regard it as directly applicable here.

For the foregoing reasons, I think the judgment should be reversed, but I do not agree to dismiss the action.

Note by BRANNON, PRESIDENT:

There is much force in the position of JUDGE SANDERS.

The party appeared and had notice of the suit; but by several cases the writ was void, and not amendable.

Were it not that I feel myself bound by *Kyle* v. *Ford*, 2 Rand. 1, *Coda* v. *Thompson*, 39 W. Va. 68, and other cases, I would agree with JUDGE SANDERS. On this line the Virginia court held that the objection that a writ is returnable to a day not a legal return day may be made for the first time on appeal. *McAllister* v. *Guggenheimer*, 21 S. E. 475.