# CHARLESTON.

## SCHOONOVER *v.* BALTIMORE & OHIO RAILROAD CO.

Submitted January 17, 1911.    Decided October 24, 1911.

1. JUDGMENT—*Entry Nunc Pro Tunc.*

    A final judgment, rendered but not entered by reason of inadvertency of the clerk, may be entered by a *nunc pro tunc* order at a term of the court subsequent to the one at which it was rendered, provided the evidence of the rendition thereof is sufficient. (p. 562).

2. APPEAL AND ERROR—*Record—Correction.*

    A writ of error to such a judgment awarded and perfected before entry thereof may be sustained by the filing of a supplemental record in the appellate court, showing amendment by such *nunc pro tunc* order. (p. 562).

3. NEGLIGENCE—*Injuries to Minors—Contributory Negligence.*

    In an action by an infant between eleven and twelve years old against a railroad company, to recover damages for an injury sustained by the former on a highway crossing, or one treated as such, by the negligence of the latter, the trial court may hold the plaintiff barred by his contributory negligence, upon a proper application for such ruling, if the facts and circumstances of the case warrant it. (p. 564).

4. SAME—*Injuries—Contributory Negligence—Children.*

    In the use of highways, children must exercise such reasonable

care, caution and prudence·for their safety as may be expected
from them in view of their immaturity. The standard or meas-
ure of duty in each case is determinable by the capacity or-
dinarily possessed and exercised by children of the age and de-
velopment of the class to which the individual belongs.   (p.
565).

5.   RAILROADS—*Operation—Injuries at Crossing—Injury Avoidable
Notwithstanding Contributory Negligence.*

In passing its train over a crossing provided by itself for pub-
lic use, though not legally a public crossing, a railroad com-
pany must comply with the common law requirements, imposed
for the safety of persons using public crossings.   (p. 568).

6.   SAME.

Though a person injured on such a crossing by a train was
himself in fault, his negligence does not preclude recovery for
the injury, if the servants of the railway company in charge of
the train could have discovered the danger and prevented the in-
jury by keeping a look-out on the crossing and checking or stop-
ping the train. In such case, their failure of duty is the latest
negligence and the proximate cause of the injury.   (p. 569).

Error to Circuit Court, Cabell County.

Action by Clifford Schoonover against the Baltimore & Ohio
Railroad Company. Judgment for defendant, and plaintiff
brings error.

*Reversed.*

*Williams, Scott & Lovett,* for plaintiff in error.

*Vinson & Thompson,* for defendant in error.

POFFENBARGER, JUDGE:

In an action of trespass on the case, brought by Clifford
Schoonover, against the Baltimore & Ohio Railroad Company,
in the circuit court of Cabell county, for the recovery of damages
for a personal injury, alleged to have been wrought by the
negligence of the defendant, there was a demurrer to the evi-
dence of the plaintiff which the court sustained, after a condi-
tional verdict had been found by the jury, assessing the damages
at the sum of $3,000.00. Agreeably to the finding of the court
upon the law of the case, an order was entered, sustaining the
demurrer and giving the defendant a judgment for costs, but not
dismissing the action. However, a writ of error was awarded

and the case submitted to the court as upon a final judgment. That this was not a final judgment in appellate law appears from *Epstein* v. *Totten*, 63 W. Va. 602; *DeArmit* v. *Town of Whitmer*, 63 W. Va. 301; *Ritchie County Bank* v. *Bee*, 60 W. Va. 386; *Corley* v. *Corley*, 53 W. Va. 143; *Hannah* v. *Bank*, 53 W. Va. 82.

After submission of the case in this Court, however, the circuit court entered an order, reciting rendition of judgment of *nil capiat* at the time of the entry of the order above described and clerical omission to include it in that order, and entering the judgment *nunc pro tunc*. This raises the question of power in the trial court to amend its record, after perfection of a writ of error and submission in the appellate court.

Legally, the inquiry divides into two parts, the first of which is, whether a final judgment can be entered *nunc pro tunc;* and the other, whether an amendment so made will sustain the writ of error. Such an amendment may be made. *Vance* v. *Railway Co.*, 53 W. Va. 338; *Ninde* v. *Clarke*, 4 Am. St. Rep. 832, note, pp. 828-30. In this valuable note we find the following proposition, sustained by numerous decisions: "A court which has ordered a judgment which the clerk has failed or neglected to enter in the record has power, even after the term at which it was rendered has passed, to order the judgment so rendered to be entered *nunc pro tunc*, provided there be satisfactory evidence that the judgment was rendered as alleged and of the nature and extent of the relief granted by it." Sufficiency of the evidence upon which the amendment was made is not questioned. That an amendment of the record of a case in the trial court, pending a writ of error, may be carried into the record in the appellate court and made effective there, is also affirmed by authority: After such an amendment, carried up as aforesaid, the appellate court will act upon the record as corrected. *Wells* v. *Smith*, 49 W. Va. 78; *Gauley Coal Land Ass'n* v. *Spies*, 61 W. Va. 19; *Hopkins* v. *Railroad Co.*, 42 W. Va. 535; 18 Enc. Pl. & Pr. 958. We find no authority inconsistent with this view. Hastily read, *Tatum* v. *Snidow*, 2 H. & M. 542, may seem to be so, but it is not. Though the subsequent order therein entered recited omission of entry of the judgment by the clerk, the judgment was not entered *nunc pro tunc* and virtually dated back, as in this case, so as to work an amendment.

Reason and justice as well as authority sustain our conclusion. The defect resulted from mere inadvertence and was purely technical. Until the hearing on the writ of error, both parties proceeded under the impression that the judgment was technically, as well as substantially, final. Discovery of the defect then was matter of surprise to them as no doubt it was to the trial court on the application for amendment. Correction thereof by amendment saves time and expense and faciliatates disposition of business, without working injury in any respect.

The plaintiff, a boy about eleven and a half years old, was so badly injured on the track of the defendant company that one of his legs had to be amputated below the knee. The injury occurred at a point used as a crossing, but the status of that crossing, is an element in the case. It would be in the line of 17th Street of the city of Huntington, if extended northward so as to cross the railroad, but had never been established by the city as a street or public crossing. The general direction of the railroad at that point is east and west. On the southside thereof and west of 17th street, running to the railroad at right angles, there was a park, boarded up along the railroad on one side, and along said street on another, in which a game of baseball was played on the day of the injury. The grandstand, occupied by spectators, was in the angle. Occasionally, foul balls would go over the fence, and boys on the outside recovered and returned them, in consideration of which they were admitted into the park. The plaintiff and a number of other persons were on the outside, some watching the game through cracks in the fence and others looking over the fence from the tops of box-cars, standing on a switch on the opposite side of the railroad track. A foul ball having gone over the fence and diagonally cross the railroad in a northeasterly direction and stopped a short distance beyond, from fifteen to thirty feet, the plaintiff ran after it, and having obtained it, ran back on the track, whence he threw it into the park, halting momentarily, some of the witnesses say. At this time, a train consisting of an engine and two cars, drawn by the engine running backwards, was approaching from the east at the rate of ten or fifteen miles per hour. When the boy threw the ball, in apparent ignorance of its approach, the engine was not more than 60 or 70 feet distant. The train was going west and he diagon-

ally across the track in a southwesterly direction. Hence his face was turned from the train, but he went on the track without looking for an approaching train or engine. Wholly absorbed in what he was doing, he was oblivious of the train. Some witnesses testify that they and others, seeing the danger, called to him but are unable to say he heard them, as there was much noise and confusion both inside and outside of the park. As he left the track the train, rushing on, caught his right foot and leg. Some distance east of the place of the injury there was a cattle pen, near which some witnesses say there were two long blasts of the whistle of the approaching engine, one east and the other west. Others say they never heard them. There is no evidence that any bell was rung as the train approached the crossing, and all the witnesses agree that just about the time the boy was struck two or three short sharp blasts from the whistle were heard. There was nobody on the tender of the backing engine, nor does it appear that anybody on the engine kept a lookout upon the crossing.

That the train was running at a higher rate of speed than the city ordinance permitted, seems not to be controverted. At any rate, it could have been inferred from the evidence. That a lower rate of speed would have avoided the injury is another inference justified by it, since the boy was almost out of danger when the train struck him. Therefore, we may safely assume negligence on the part of the defendant company.

Whether the conduct of the plaintiff amounted to contributory negligence is an important inquiry in the case. Had he been an adult, his contributory negligence, in going upon the railroad track, directly in front of the approaching train, plainly in view, without looking in either direction along the track, or in any way exercising his powers of observation for his own safety, would be clearly manifest. *Reidel* v. *Traction Co.*, 63 W. Va. 552. · But this boy was only about eleven years and five months old. He testified in January, 1906, that he had attained his thirteenth year in the preceding November. The action was brought at October Rules, 1904, and the declaration avers that he was hurt on the 23rd day of April, 1904. As to whether a person of that age is *sui juris* within the law of negligence, and how the fact is to be determined, there is some conflict among the authorities. In some jurisdictions, the

courts hold that, between the ages of seven and fourteen, there is a presumption of a lack of prudence, foresight, caution and comprehension of danger which carries every case to the jury and denies to the court the power to say there was contributory negligence as matter of law.    *Trumbo's Adm'r* v. *Street Car Co.,* 89 Va. 780; *Railway Co.* v. *Quayle,* 95 Va. 741; *City of Roanoke* v. *Shull,* 34 S. E. 34.    Other cases, proceeding upon the same theory, will be found cited in the note to *Barnes* v. *Railroad Co.,* 49 Am. St. Rep. 400, 410.    See also 3 Elliott on Railroads, sec. 1261, note 122.    But this rule is by no means generally accepted.    Numerous decisions declare 'that in cases of injury occurring upon highways and railroads, failure of a child to exercise such care, caution and foresight as is ordinarily posessed and exercised by children of his age will bar recovery for an injury thereby occasioned.    In these cases, the measure or standard of care required is not that of adults, but of the class of persons to which the injured party belongs, and seems to rest upon the view that, in using a highway, provided for all classes of persons who are accustomed to go abroad without guardians or protectors, the traveler is bound to use, in the exercise of that right, such judgment and prudence as are usually and ordinarily possessed by persons of the class to which he belongs, and that failure to exercise the same constitutes negligence, whether he be above or below the age of fourteen.    This proposition is sustained by a decided weight of authority in all actions by infants for personal injuries, except those between master and servant.    *Railway Co.* v. *McDaniell,* 43 Md. 534; *Railroad Co.* v. *Hanlon,* 53 Ala. 70; *Railroad Co.* v. *Murray,* 71 Ill. 601; *Swift* v. *Railroad Co.,* 123 N. Y. 645; *Hayes* v. *Cross,* 162 Mass. 546; *Wright* v. *Railway Co.,* 77 Mich. 123; *Collins* v. *Railroad Co.,* 142 Mass. 301; *Messenger* v. *Dennie,* 141 Mass. 335; *Id.* 137 Mass. 197; *Hayes* v. *Norcross,* 162 Mass. 546; *Stackpole* v. *Railway Co.,* 193 Mass. 562; *Fitzhenny* v. *Traction Co.,* 8 Am. Neg. Rep. 288; *Railway Co.* v. *Flanagan,* 57 N. J. L. 518; *Brady* v. *Traction Co.,* 42 Atl. 1054; *Payne* v. *Railroad Co.,* 129 Mo. 405; *Colcomb* v. *Railway Co.,* 100 Me. 418; *Fenton* v. *Railroad Co.,* 126 N. Y. 625; *Tucker* v. *Railroad Co.,* 124 N. Y. 308; *Thompson* v. *Railway Co.,* 145 N. Y. 196; *Railroad Co.* v. *Todd,* 54 Kan. 551; *Railway Co.* v. *Eininger,* 114 Ill. 79; *Masser* v. *Railroad Co.,* 68 Ia. 602; *Normand* v. *Elec-*

*tric Co.,* 35 Queb. 329; *Mowrey* v. *Railway Co.,* 51 N. Y. 666; *Evans* v. *Mills,* 119 Ga. 449; *Young* v. *Small,* 188 Mass. 4.

Practically all courts hold infants between the ages of seven and fourteen capable of contributory negligence. Those in which the view here announced does not prevail submit to the jury, upon the facts and circumstances, the inquiry whether there has been contributory negligence. The mere submission of the question asserts capacity of the infant negligently to contribute to his injury, within the meaning of the law, under certain circumstances. The difference or conflict respects a rule of practice, not principle, some courts saying the question is always one for the jury, and others that it is for jury determination only when the evidence makes it a jury question, under the rules of practice applicable to other questions. If the act of an infant plaintiff is so obviously dangerous that no reasonable man can truthfully say children of his age do not ordinarily know it to be dangerous and voluntarily abstain from it, there is no more reason for submitting the question of contributory negligence to the jury than in the case of an adult plainly guilty of such negligence, and there is the same reason why it should not do so. Prudence and capacity to comprehend danger are not the only elements involved. These may be clear beyond doubt, as in the case of an adult. The defensive issue raised is negligence in which the age, intelligence and characteristics of the plaintiff are only factors. Hence it is fallacious to say that because these are inferior to those of an adult, the issue must be submitted to a jury. Though inferior in that sense, they may be amply and indisputably such as to hold the plaintiff to responsibility for his acts under the circumstances of the case. Inferiority to an adult in these respects does not absolve him from responsibility. If it did, the case could not even go to the jury on the question of contributory negligence. That defense could not be made. But practically all courts admit it except in the cases of very young children, deemed incapable of appreciating common or ordinary danger. The standard or measure of responsibility is lower than that for adults, but, if an infant plaintiff comes clearly up to it, there is no occasion for submitting his capacity to the jury as a doubtful question, and if, the danger encountered by him was so plainly obvious that one of his years must have appreciated it, or the

duty omitted by him so clear and natural that he must be deemed to have been cognizant of it, the court should declare his contributory negligence, upon a proper application, as in other cases.

The basis of the conflict in authority seems therefore to arise from failure or refusal on the part of those courts which insist upon making the question of negligence on the part of an infant between the ages of seven and fourteen years, always one for the jury, to recognize any standard or measure of responsibility in children. That they have some intelligence cannot be denied. Nor is it possible to say they do not have enough to enable them to appreciate or comprehend certain forms of obvious danger or to know how to avoid it, or to feel a sense of duty under certain circumstances. If the court can say, and it does, as matter of judicial knowledge, that an adult ought to know certain things and be able to take adequate precaution for his own safety, why has it not the same power to say, as a matter of judicial knowledge, that children of certain ages are able to comprehend and avoid certain kinds of danger? The adoption of the theory or view that a child must exercise such care, caution, prudence and foresight as children of his age ordinarily possess and exercise, makes the question of contributory negligence in the case of a child, treated as one of law for determination by the court, just as easy of solution as in the case of an adult, and the conclusion is reached by exactly the same process of reasoning.

That contributory negligence in cases of this class is frequently declared to be generally a question for the jury is not inconsistent with the conclusion here stated, for that is said of all cases involving this defense, and it is true. More cases of each class go to the juries than are decided by the courts. The expression means only that determination by the jury is the general rule and by the court the exception thereto.

This conclusion does not necessarily conflict with the principle declared in *Bare* v. *Coal Co.*, 61 W. Va. 28, and *Wilkinson* v. *Coal Co.*, 64 W. Va. 93, and other cases arising between master and servant, and vastly different in many respects from this. As between master and servant, there is a contractual relation. There is none here. These parties were strangers, standing substantially upon an equal footing in respect to the

use of a highway. The difference between the reciprocal rights of the plaintiff and defendant here and those between an adult and such a defendant, in a similar situation, is the requirement of more care on the part of the latter in its relations with the former, in view of his immaturity, lowering the standard of responsibility. Highway and railroad risks, dangers and reciprocal rights are matters of daily cognizance and experience with boys and with men. No presumption of their ignorance thereof can be indulged or supposed. They are not brought into or kept in contact with them by the compulsion or restraint of the railroad companies or other persons using the highways. Boys employed in mills, factories and mines are held by their contracts to duties which necessitate unaccustomed precautions against danger and constantly expose them to hazards dangerous and unfamiliar. Frequent recurrence of these exposures and precautionary duties, incident to the performance of the work, requires vigilance, constancy and singleness and steadiness of purpose, characteristic of adults rather than children. That such ability, natural or acquired, is necessary to the protection of themselves and their fellow servants in such situations seems to be reasonably clear. Hence there is cogent reason for a higher standard or measure of capacity on the part of the infant in cases arising between master and servant. In service the boy is charged with novel duties and exposed to unaccustomed hazards and charged with responsibilities like or very similar to those imposed upon adults. He has not grown up with them as he has with the hazards of the street, the play-ground and mere casual contact with men, structures, machines, animals, vehicles and other means of injury.

Without noting it or giving any reason for it, the courts seem to make this distinction. In cases between master and servant, in which the plaintiff is an infant under fourteen years of age, contributory negligence is seldom declared as matter of law. In other cases, this result is of frequent occurrence, as will appear from an examination of the long list of decisions herein cited.

We have no doubt the plaintiff knew the danger of going upon a railroad track without looking for trains. His home was in Clay county on the line of a railroad and he was in Huntington at the time of the injury, attending the spring term of school at Marshall College. His situation and engagement at the

time indicate possession of the intelligence and discretion of boys of his age, thousands of whom daily cross railroads, trolley lines and highways, exercising discretion and prudence requisite to their safety. Hence the trial court properly held him guilty of negligence as matter of law.

But, if the servants of the railway company in charge of the train omitted a duty, performance of which would have avoided the injury, such omission must be deemed the proximate cause thereof, and the defendant is liable notwithstanding the plaintiff's negligence. Though not established by the city as a public one, the crossing on which the boy was hurt was a way provided by the defendant company itself for travel across its tracks. It was at the end of a city street regularly established and maintained, and planked between the rails and on the outside thereof by the defendant, and a post with cross-arms, bearing the warning, "Look out for the locomotive, Railroad Crossing", stood near it. Under principles declared in *Ray* v. *C. & O. Ry. Co.,* 57 W. Va. 330, this may have been such a crossing as required the statutory signals. Be that as it may, persons coming upon the track at that point were there by invitation, and the company owed them the common law duty imposed in favor of persons on a public crossing, since they were neither trespassers nor bare licensees. Elliott on Railroads, sec. 1154, sustained by ample authorities cited. Such common law duty includes maintenance of a look-out or other adequate means of avoiding collision at crossings, and failure to do so is negligence, constituting proximate cause of injury, even though the plaintiff himself was negligent in going upon the track, if the performance of such duty would have prevented injury. 2 Thomp. Neg. secs. 1596-7; Elliott, Railroads, sec. 1175. The principle has been recognized and applied in a crossing case as well as others by this Court. *Riedel* v. *Traction Co.,* 71 S. E. 174; *Washington* v. *Railroad Co.,* 17 W. Va. 190; *Downey* v. *Railway Co.,* 28 W. Va. 732; *Vance* v. *Railway Co.,* 50 W. Va. 338; *McKelvey* v. *Railway Co.,* 35 W. Va. 500; *Layne* v. *Railroad Co.,* 35 W. Va. 438; *Raines* v. *Railway Co.,* 39 W. Va. 50. Opinions of witnesses vary as to the distance of the train when the boy came upon the track as well as the rate of speed; but the jury could have found the distance to be fifty or sixty feet and the rate of speed twelve miles per

hour, and also that injury would have been avoided by a check-
ing of the speed of the train. Uncontradicted testimony was
adduced, showing the engineer could have checked the speed
almost instantaneously, had he seen the boy when he came on
the track and adopted emergency precautions. It was also
competent for them to infer that the engineer would have seen
him when he came on the track, or even earlier, and apparently
intending to come upon it, if he had performed the duty in-
cumbent upon him in running his train over a crossing. Oppos-
ing this is evidence tending to prove the boy was struck almost
as soon as he got on the track, and that the train was so close
no assistance could be rendered him; but this is not conclusive.
We are of the opinion, therefore, that the case should have been
permitted to go to the jury and that the trial court erred in
sustaining the demurrer to the evidence.

The judgment will be reversed, the demurrer to the evidence
overruled and judgment rendered for the damages assessed by
the jury and costs both in this Court and the court below.

*Reversed.*

WILLIAMS PRESIDENT, *(concurring)*:

I concur in the judgment, but not in the correctness of all the
principles asserted in the opinion. I do not believe it accords
with the weight of authority, and I know it does not with our
own previous decisions, to say that the court can determine, as
matter of law, whether or not an infant under the age of four-
teen is guilty of negligence. Nor do I acquiesce in the view
that the relation of master and servant can have any effect to
vary the rules of evidence respecting negligence. Such rela-
tion may, and often does, determine relative duties. But once
they are determined, it must be ascertained what is negligence
in any given case, independent of any contractual relation.
The law of negligence rests upon relative duties. The policy
of the law forbids any one to contract against negligence. Every-
one is bound to exercise reasonable care for his own safety and
for the safety of others. He may by contract enlarge his duties,
but he cannot lessen them, whether he be employer or employe.
The degree of care required must be commensurate with the
danger attending the business the party is engaged in, if he is
employer, or commensurate with the amount of risk he has as-

sumed, if he is employe.   Negligence which causes injury is a wrong, and the remedy therefor is by an action in tort.   The duty to exercise care both for one's own safety and the safety of others exists independent of contractual relations, and I can see no sufficient reason for applying one rule of evidence to prove what is negligence in one case, and a different rule to prove it in another.   Of course, contractual relation may have the effect to create duties which did not before exist, but once the new duties are determined, the rules respecting the kind and quantity of evidence necessary to prove whether a party has failed in the performance of his duty, or not, are the same.   In other words, an infant under fourteen years of age is no more capable of caring for his safety when he is unemployed than when he is employed.

According to the weight of authorities, and according to our own decisions, the question of negligence in an infant under fourteen years of age cannot be determined, as matter of law, by the court, but must be left to the jury to decide, under proper instructions by the court as to the principles of law to be applied in determining a fact.   Negligence of an infant under fourteen depends largely upon his capacity, knowledge of danger and the degree of caution which a child of his temperament will exercise, even in the presence of a known danger.   There are such variable quantities in children between seven and fourteen years of age, that the law provides no fixed standard by which to measure the negligence of all children between those ages. The same act which would constitute negligence in one child might not amount to negligence in another of the same age. By an unanimous opinion we held in *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726, that an infant under fourteen years of age is not presumed to have sufficient capacity to avoid danger, and that his capacity had to be proven in order to make out the defence of his contributory negligence.   Now, if there is no presumption in favor of capacity, and the capacity is a question of fact essential to be proven in order to determine whether or not the child has been guilty of negligence, how can it be properly said that the court can determine the question of negligence as matter of law?

ROBINSON, JUDGE, concurs only in the syllabus and the result.